UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

PATTY SLONE,

      Plaintiff,

v.                           Civil Action No. 2:19-cv-00408

STATE AUTO PROPERTY AND CASUALTY
INSURANCE COMPANY, JOE MASK, and
SHERI LENTHE,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the joint motion of the defendants, State Auto Property and Casualty Insurance Company ("State Auto"), Joe Mask and Sheri Lenthe, to dismiss or, in the alternative, motion for summary judgment, filed on May 28, 2019.  ECF No. 3.

I.  Background

Plaintiff Patty Slone, a resident of Mingo County, West Virginia, was a guest at Janet's Park & Eat, Inc. ("Janet's") in Logan County, West Virginia, on August 4, 2016. Compl., ECF No. 1-3, at ¶ 7; <u>see</u> <u>also</u> ECF No. 23-1, at 19 (State Auto insurance policy providing the full legal name of Janet's).

1

She "sustained an [undisclosed] injury" after slipping and falling at the restaurant.  Id.  at ¶¶ 10, 28.

Janet's maintained an insurance policy through State Auto effective from April 13, 2016, to April 13, 2017.  ECF No. 23-1, at 19.  The policy includes a Commercial General Liability Coverage Part that provides for medical payments coverage up to $10,000.00, general liability coverage up to $1,000,000.00 per occurrence, and personal injury and advertising liability coverage up to $1,000,000.00.  Id. at 29.  The policy reads, in relevant part:

> COVERAGE C MEDICAL PAYMENTS
>  1. Insuring Agreement
>      a. We will pay medical expenses as described
>      below for "bodily injury" caused by an
>      accident:
>            (1) On premises you own or rent;
>            (2) On ways next to premises you own or
>            rent; or
>            (3) Because of your operations;
>            provided that:
>            (1) The accident takes place in the
>            "coverage territory" and during the
>            policy period;
>            (2) The expenses are incurred and
>            reported to us within one year of the
>            date of the accident; and
>            (3) The injured person submits to
>            examination, at our expense, by
>            physicians of our choice as often as we
>            reasonably require.

2

        b. We will make these payments regardless of fault.  These payments will not exceed the applicable limit of insurance.  We will pay reasonable expenses for:

            (1) First aid administered at the time of an accident;
            (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and
            (3) Necessary ambulance, hospital, professional nursing and funeral services.

Id. at 137.[1]  The policy then lists exclusions from medical payments coverage:

      2.  Exclusions
        We will not pay expenses for "bodily injury":
        a. Any Insured
        To any insured, except "volunteer workers".
        b. Hired Person
        To a person hired to do work for or on behalf of any insured or a tenant of any insured.
        c. Injury On Normally Occupied Premises
        To a person injured on that part of premises you own or rent that the person normally occupies.
        d. Workers Compensation And Similar Laws
        To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

---

[1]   Under the State Auto policy, "bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time."  ECF No. 23-1, at 142.  Inasmuch as the defendants do not assert that Slone did not sustain a "bodily injury" as defined by the policy, the court assumes for the purposes of this opinion that this point is not at issue.

> e. Athletics Activities
> To a person injured while practicing,
> instructing or participating in any physical
> exercises or games, sports, or athletic
> contests.
> f. Products-Completed Operations Hazard
> Included within the "products-completed
> operations hazard".
> g. Coverage A Exclusions
> Excluded under Coverage A.

Id.[2]

The Janet's State Auto policy also pertinently defines "insured."  "Insureds" include, as relevant here and with certain exceptions: (1) an entity that is "designated in the Declarations" and is not "a partnership, joint venture or

---

[2]     Coverage A, i.e., the general liability "Bodily Injury and Property Damage Liability," exclusions that pertain to bodily injuries and not solely property damage, which is not relevant, include: liability for expected or intended injuries; contractual liability; liquor liability; liability under workers' compensation, disability benefits, unemployment compensation, or similar laws; employers' liability; liability arising from pollution; liability arising from the aircraft, auto, or watercraft of an insured;  liability arising from mobile equipment of an insured; liability arising from war; personal and advertising injury liability; and liability resulting from "recording and distribution of material or information in violation of law."  ECF No. 23-1, at 132-36, 145. The defendants do not contend that Slone fits these exclusions.

limited liability company";[3] (2) executive officers and directors when acting with respect to their duties as well as stockholders with respect to their liability as stockholders; (3) employees and volunteer workers of the entity; and (4) any person acting as a real estate manager for the entity.  Id. at 138-39.  The policy does not confer "insured" status on guests such as Slone.

Finally, the policy's Coverage A (the general liability coverage titled "Bodily Injury and Property Damage Liability") and Coverage B (titled "Personal and Advertising Injury Liability") provisions each promise to pay "sums" for certain injuries that the insured "becomes legally obligated to pay as damages" as a result of separate civil actions.  Id. at 132, 136.  Coverages A and B differ from Coverage C inasmuch as the Coverage C medical payments coverage promises to pay "expenses" rather than "sums" relating to "damages" that result from separate lawsuits.  See id. at 137.

---

[3]     Janet's as well as Morrison's Drive Inn, Inc. are listed as the "First Named Insured" in the Declarations.  ECF No. 23-1, at 19.  Although it is not a "First Named Insured," Parkway Drive Inn, Inc. is listed as a named insured in the Declarations.  Id. at 20.  "Additional Interests/Insureds" include Logan Property Management LLC as a "Manager or Lessor of Premises," and "Owners, Lessees or Lessor of Leased Equipment — Automatic" also qualify as "Additional Insured[s]" in the declarations.  Id. at 30, 34, 35.

Slone filed suit against Janet's in the Circuit Court of Logan County, Civil Action No. 17-C-283, purportedly seeking damages for her fall that could be covered by the Coverage A general liability coverage of the State Auto Policy.  ECF No. 1-3, at ¶ 22; ECF No. 4, at 2 n. 3; ECF No. 6, at 2.  That action was dismissed on summary judgment inasmuch as, according to the plaintiff, the circuit court "found that Janet's Restaurant was not liable for Slone's injuries as the hazard which caused said injuries was open and obvious."  ECF No. 6, at 2.

The complaint does not describe when or how Slone submitted a medical payments coverage claim under the Janet's State Auto policy, but Slone indicates that "Defendants State Auto and Mask acknowledged [her] injury and applicable medical payments coverage with limits for said incident in the amount of $10,000.00."  ECF No. 1-3, at ¶ 11.  Slone claims that the expenses caused by her injury exceeded the $10,000.00 medical payments coverage limit.  Id. at ¶ 12.  She adds that "much" of her medical expenses were paid by Medicare and that Medicare had a right to reimbursement of proceeds issued pursuant to the $10,000.00 coverage.  Id. at ¶ 13.  It is alleged that the defendants "acted to induce Plaintiff Slone to seek a reduction

of her Medicare lien, which she did, on the inducement that Defendants would pay the reduced amount to Medicare and then pay the balance to Plaintiff." Id. at ¶¶ 55.

Slone further alleges that on May 29, 2018, Medicare sent her a $4,882.58 "final demand in satisfaction of its right of reimbursement from Defendant State Auto's medical payments coverage," which she forwarded to State Auto. Id. at ¶ 15. Slone contends, and the defendants acknowledge, that State Auto reimbursed Medicare in the amount of $4,882.58 on August 2, 2018. Id. at ¶ 16; ECF No. 7, at 2.

Slone states that she then "immediately demanded that the medical payment policy limits balance of $5,117.42 be paid to her and her attorney pursuant to the provisions of the policy." ECF No. 1-3, at ¶ 17. She alleges that on August 29, 2018, Medicare "acknowledged no further conditional payments" from the medical payments coverage. However, Slone claims that State Auto erroneously opened a second medical payments claim with Medicare and that she thereafter notified State Auto of this error and again demanded payment of the $5,117.42 balance. Id. at ¶¶ 20-21.

After this demand, Lenthe, an employee or agent of
State Auto, allegedly "attempted to induce Plaintiff Slone to
resolve the outstanding medical payments due by compromising her
liability claim against Defendant State Auto's insured,
Janet's," in violation of West Virginia insurance statutes and
regulations.  Id. at ¶ 22; accord id. at ¶ 5.  According to the
plaintiff, State Auto, Mask, and Lenthe "have failed and
continue to fail to pay the remainder of the medical payments
coverage policy limits and have not acknowledged receipt of the
demand nor offered any explanation as to why they have failed to
pay the remaining balance of the medical payments coverage that
is due." [4]  Id. at ¶ 19.

The defendants offer a slightly different version of
events.  In their June 17, 2019 reply to the pending motion,
they assert that Slone acknowledged that Medicare held a second,
unresolved lien on the medical payments coverage after the first
lien was resolved.  ECF No. 7, at 2.  They state, however, that
on June 10, 2019, subsequent to the filing of this action on May

---

[4]     Mask's exact role in State Auto's conduct is not evident
from the face of the complaint other than allegations that he is
an employee or agent of the insurance company who was somehow
involved in the handling of the medical payments coverage claim.
See ECF No. 1-3, at ¶ 5.  Regardless, the defendants do not
raise this as an issue.

24, 2019, counsel for the plaintiff disclosed a letter from Medicare indicating that the second lien had been resolved.  Id. Counsel for the defendants confirmed during a December 21, 2020 telephonic status conference with the court and counsel that all Medicare liens have been resolved.

Slone filed this action in the Circuit Court of Mingo County on April 16, 2019.  Her complaint alleges three counts against the defendants: Count I, "First Party Bad Faith (Common Law)": Count II, "Violations of the West Virginia Unfair Trade Practices Act," a statutory bad faith claim brought under W. Va. Code § 33-11-4(9); and Count III, Fraud.[5]  Id. at ¶¶ 27-53.

The defendants have provided the circuit court docket sheet, which documents the plaintiff's efforts at service during the outset of the case and is quoted verbatim below:

| Date | Action / Result |
|------|-----------------|
| 04/16/2019 | COMPLAINT FILED & SUMMONS ISSUED; SUMMONS SENT TO ATTY — DID NOT |

---

[5]    The plaintiff clearly asserts all three counts against State Auto and Lenthe.  However, Mask is only directly mentioned in the context of the statutory bad faith claim, and as noted, his precise role in State Auto's alleged misconduct is not clear.  See ECF No. 1-3, at ¶ 53.  But the defendants do not challenge the complaint on these grounds, and the court declines to address the issue in this opinion.

9

|            | SENT CORRECT AMOUNT FOR CERT MAIL<br>& MAIL FEE;                                                   |
|------------|----------------------------------------------------------------------------------------------------|
| 04/25/2019 | SUMMONS IS SUED FOR SHERI LENTHE &<br>JOE MASK CERT MAIL, RTRN REC & RES<br>DEL;                    |
| 04/29/2019 | ACCEPTED SERVICE OF PROSCESS SOS<br>ON BEHALF OF STATE AUTO PROPERTY<br>AND CASUALTY INSURANCE COMPANY<br>FILED; |
| 05/03/2019 | RETURN CERTIFIED MAIL CARD SIGNED<br>(CANT READ SIGNATURE) 04-30-19<br>FILED;                       |
| 05/03/2019 | RETURN CERTIFIED MAIL CARD SIGNED<br>(CANT READ SIGNATURE) 04-30-19<br>FILED                        |

ECF No. 1-1.  Additionally, the summonses for all three defendants appear in the record and are dated April 16, 2019. ECF No. 1-3, at 14-16.  Neither party has filed certified mail receipts or returns pertaining to the service of the defendants.

The defendants removed the action to this court on May 24, 2019.  ECF No. 1.  They filed the pending motion on May 28, 2019.  ECF No. 3.  In the motion, the defendants assert two separate challenges.  The first concerns Slone's ability to assert any of her claims, namely, West Virginia Unfair Trade Practices Act ("UTPA") bad faith, common law bad faith, and fraud.  ECF No. 4, at 4-8.  The second concerns service of

process on Mask and Lenthe, who according to the defendants,

reside in Tennessee and Minnesota, respectively, and whom the

plaintiff attempted to serve at State Auto's corporate

headquarters in Columbus, Ohio.  Id. at 3, 8-9.  The defendants

moved to stay discovery on September 4, 2019 pending the

resolution of the motion, whereupon the court granted a stay on

September 26, 2019.  ECF No. 17.

## II.  Legal Standards

### A.  Failure to State a Claim

The challenge to Slone's ability to bring the bad

faith and fraud claims is styled as a Federal Rule of Civil

Procedure 12(b)(6) motion for failure to state a claim or, in

the alternative, a Rule 56 motion for summary judgment.  The

defendants have produced several pieces of evidence outside the

pleadings in support of their arguments relating to Slone's

ability to bring bad faith claims.  These include an excerpt of

the Janet's State Auto policy that provides for the medical

payments coverage, its exclusions, and the definition of

"Insured" (ECF No. 3-2), a copy of the plaintiff's May 14, 2019

administrative complaint in a related state proceeding before

11

the West Virginia Office of the Insurance Commissioner (ECF No. 7-1), and a copy of a May 15, 2019 letter from an insurance specialist of the Office of the Insurance Commissioner to State Auto (ECF No. 7-2).  Further, upon the court's request, the parties submitted a jointly stipulated full copy of the State Auto insurance policy.  ECF No. 23; ECF No. 23-1.

A motion styled as a motion to dismiss or, in the alternative, for summary judgment "implicates the [c]ourt's discretion under [Federal Rule of Civil Procedure] 12(d)." Stone v. Trump, 400 F. Supp. 3d 317, 349 (D. Md. 2019) (citation omitted).  Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  The Fourth Circuit has also clarified that documents attached to a motion to dismiss may be considered without converting the motion to one for summary judgment "so long as they are integral to the complaint and authentic."  Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The excerpt of the Janet's State Auto policy (ECF No. 3-2) was attached as an exhibit to the pending motion, and the court considers the full stipulated policy (ECF No. 23-1) as a timely supplement to that exhibit.  The Janet's State Auto policy is integral to the complaint inasmuch as it is repeatedly referenced therein and provides for the medical payments coverage that underlies the claims in this action.  <u>See</u> ECF No. 1-3 (Complaint).  Additionally, the parties acknowledge the authenticity of the policy in their stipulation.  <u>See</u> ECF No. 23 (stipulating that the policy "is a full and complete certified copy of the insurance policy"). The other documents furnished by the defendants do not appear to be integral to the complaint. And the resolution of the legal issues presented does not hinge on these documents.  Thus, the court considers the insurance policy as it relates to the Rule 12(b)(6) portion of the motion to dismiss without converting the motion to one for summary judgment while excluding the other documents produced by the defendants insofar as they are offered in relation to the

pending motion. [6]

    Federal Rule of Civil Procedure 8(a)(2) requires that
a pleading contain "a short and plain statement of the claim
showing that the pleader is entitled to relief."  Rule 12(b)(6)
correspondingly provides that a pleading may be dismissed when

---

[6]    The court also notes that on January 30, 2020, more than
seven months after briefing of the pending motion concluded and
more than four months after this action was stayed, the
defendants also filed a "supplemental memorandum of law" in
support of the motion.  ECF No. 17.  This filing includes other
exhibits relating to the separate administrative proceeding
before the Office of the Insurance Commissioner, namely, a
September 13, 2019 letter from the Office of the Insurance
Commissioner to counsel for the plaintiff closing the
administrative complaint (ECF No. 19-1), Slone's September 17,
2019 administrative request for a hearing regarding the closing
letter (ECF No. 19-2), and the Office of the Insurance
Commissioner's December 19, 2019 order denying a hearing on the
matter (ECF No. 19-3).

    Slone has responded to this memorandum, arguing that it is
not authorized by the Federal Rules of Civil Procedure or the
Local Rules of Civil Procedure.  ECF No. 20, at 1-2.  She also
states that consideration of the administrative rulings is
premature inasmuch as they have been appealed to the Circuit
Court of Kanawha County.  Id. at 2.  Slone requests attorney's
fees associated with responding to the unauthorized filing.  Id.

    The court agrees that this filing was unauthorized.  The
supplemental memorandum is essentially a surreply, which
requires leave of court under Local Rule of Civil Procedure
7.1(a)(7).  The defendants did not seek leave of court prior to
filing the memorandum.  Additionally, the resolution of the
pending motion does not hinge on consideration of the memorandum
or its exhibits.  Although the court declines to award
attorney's fees, it does not consider the memorandum or its
exhibits in disposing of the motion to dismiss.

there is a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citation omitted).

The court "must accept as true all of the factual allegations contained in the [pleading]." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56). Such factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true. Iqbal, 556 U.S. at 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.

B.  Sufficiency of Service

The second argument in the motion challenges the service of Mask and Lenthe.  The defendants mention that improper service of process constitutes a lack of personal jurisdiction over these defendants.  ECF No. 4, at 9.  However, they specify that they proceed under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process and do not claim to proceed under Rule 12(b)(2) for lack of personal jurisdiction.  Id. at 1.

Further, it appears that the defendants pose a Rule 12(b)(5) challenge inasmuch as they title the argument as "Plaintiff did not properly serve Defendant Mask and Defendant Lenthe" and they do not conduct a personal jurisdiction analysis apart from pointing out that personal jurisdiction is linked, to some degree, with service of process.  ECF No. 4, at 8-9 (citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.")).  Relatedly, they rely on the West Virginia Rules of Civil Procedure in support of their sufficiency of process

arguments inasmuch as "[t]he issue of the sufficiency of service of process prior to removal is strictly a state law issue."  Id. at 8 (quoting Wolfe v. Green, 660 F. Supp. 2d 738 (S.D. W. Va. 2009)).

Accordingly, the court construes this argument as one under Rule 12(b)(5) for insufficient service of process.  Under Rule 12(b)(5), the "[p]laintiff bears the burden of establishing the validity of service once that service is contested."  McCoy v. Norfolk Southern Ry. Co., 858 F. Supp. 2d 639, 651 (S.D. W. Va. 2012) (citing Homer v. Jones–Bey, 415 F.3d 748, 754 (7th Cir. 2005); Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993)).

### III. Analysis

#### A.  Failure to State a Claim

The defendants contend that the claims alleged against them fail as a matter of law inasmuch as they are based in bad faith and the plaintiff is a third-party claimant who cannot recover under West Virginia law.  ECF No. 4, at 5-8. Specifically, the defendants assert that Slone is not a policyholder or insured under the State Auto policy, which makes

17

her a third-party claimant for the purposes of her common law
(Count I) and UTPA (Count II) bad faith claims.  Id. at 6-8.
The defendants attempt to fortify their position by asserting
that the plaintiff is a third-party claimant for the purposes of
the Insurance Commissioner's definition found in W. Va. C.S.R. §
114-14-2.8.  Id. at 7.  They argue that third-party claimants
have no cause of action for common law bad faith under Elmore v.
State Farm Mutual Automobile Insurance Co., 504 S.E.2d 893
(1998), or the UTPA under W. Va. Code § 33-11-4a.  Id.  They
also contend that the "claim for fraud (Count III) similarly
must be dismissed as it arises out of the claims-handling
process of Plaintiff's claim for medical payments under the
policy." Id. at 8.

Slone responds that she meets the definition of
first-party claimant under W. Va. C.S.R. § 114-14-2.3 inasmuch
as she is an individual who asserts a right to payment under the
policy rather than against an insured, such as Janet's.  ECF No.
6, at 2-3.  She further contends that the definition of first-
party claimant is distinct from that of an insured and that
first-party claimants are not always insureds as evidenced by
Goff v. Penn Mutual Life Ins. Co., 729 S.E.2d 890 (W. Va. 2012)

(life insurance beneficiary).

　　　　West Virginia does not recognize third-party common law or statutory causes of action for bad faith.  In 1998, the West Virginia Supreme Court of Appeals considered, inter alia, the question of whether there exists a cognizable cause of action for "common law breach of the implied covenant of good faith and fair dealing (common law bad faith)."  Elmore, 504 S.E.2d at 896.  The Elmore court concluded that state caselaw:

> makes it clear that the common law duty of good faith and fair dealing in insurance cases under our law runs between insurers and insureds and is based on the existence of a contractual relationship.  In the absence of such a relationship there is simply nothing to support a common law duty of good faith and fair dealing on the part of insurance carriers toward third-party claimants.  We therefore decline to expand our prior holdings regarding common law bad faith claims to allow third parties to bring an action against the insurance carrier of another.

Id. at 897.

　　　　In 2005, the West Virginia Legislature passed W. Va. Code § 33-11-4a, which precludes third-party bad faith claims under the UTPA.  Specifically, the statute provides:

> A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice.  A third-party

19

> claimant's sole remedy against a person for an unfair
> claims settlement practice or the bad faith settlement
> of a claim is the filing of an administrative
> complaint with the Commissioner in accordance with
> subsection (b) of this section.  A third-party
> claimant may not include allegations of unfair claims
> settlement practices in any underlying litigation
> against an insured.

W. Va. Code § 33-11-4a(a) (2005).  For the purposes of the

statutory bar, a third-party claimant "means any individual,

corporation, association, partnership or any other legal entity

asserting a claim <u>against</u> any individual, corporation,

association, partnership or other legal entity <u>insured</u> <u>under</u> <u>an</u>

<u>insurance</u> <u>policy</u> or insurance contract for the claim in

question."  W. Va. Code § 33-11-4a(j) (2005) (emphasis added).

The statute's text supports the conclusion that Slone may bring

a statutory bad faith claim.  Slone is not a third-party

claimant bringing this action "against an insured."  Slone

proceeds against the insurer itself in this action.  State Auto

is plainly not an entity insured under the Janet's policy — it

is itself the insurer.  Slone does not meet the statutory

definition of "third-party claimant" and inasmuch as the statute

only precludes such third-party claimants from asserting a cause

of action for UTPA bad faith, it does not purport to bar Slone

from bringing her statutory claim.

Other sources support this conclusion.  In <u>Goff</u>, the
Supreme Court of Appeals considered whether a plaintiff
third-party beneficiary of a life insurance policy could bring a
statutory bad faith claim under the UTPA even though he was not
a party to the insurance contract or an insured under the
policy.[7]  729 S.E.2d at 892.  The court first rejected the
defendant insurer's argument that the plaintiff, the named
primary beneficiary of the life insurance policy in question,
was not a third-party beneficiary of the policy under the West
Virginia third-party beneficiary statute, W. Va. Code § 55-8-12
(2008).  <u>Id.</u> at 894.

The court next concluded that "[j]ust because the
person who is asserting the claim is a third party with regard
to the subject insurance policy, that fact alone does not alter
the nature of the contract itself."  <u>Id.</u> at 895.  The court
found that the life insurance policy at issue was, as to the
third-party beneficiary, "clearly a first-party contract."  <u>Id.</u>
at 896.  Since the policy was a first-party contract and the
deceased insured policyholder clearly intended the plaintiff

---

[7]    <u>Goff</u> did not involve a common law bad faith claim, and the
court accordingly considers it in the context of a UTPA
analysis.

third-party beneficiary to obtain the relevant insurance proceeds upon her death, the court determined that the beneficiary had standing to bring a statutory bad faith claim against the insurer under the UTPA even though he was not an insured under the policy.  Id. at 895-96.

Goff's applicability to this case turns on whether Slone is a third-party beneficiary of the State Auto policy's medical payments provision.  According to the third-party beneficiary statute,

> [i]f a covenant or promise be made for the sole
> benefit of a person with whom it is not made, or with
> whom it is made jointly with others, such person may
> maintain, in his own name, any action thereon which he
> might maintain in case it had been made with him only,
> and the consideration had moved from him to the party
> making such covenant or promise.

W. Va. Code § 55-8-12.  "The use of the term 'sole' [in W. Va. Code § 55-8-12] does not mean the inclusion of more than a single beneficiary prevents this provision from taking effect." Goff, 729 S.E.2d at 894 (citing Aetna Life Ins. Co. v. Maxwell, 89 F.2d 988, 993-94 (4th Cir. 1937); Erwin v. Bethlehem Steel Corp., 62 S.E.2d 337 (1950)).  Instead, a plaintiff may maintain an action as a third-party beneficiary to a contract "if the contract is made and intended for the benefit of a class of

22

persons definitely and clearly shown to come within the terms of the contract" and the plaintiff is a member of that class. United Dispatch v. E.J. Albrecht Co., 62 S.E.2d 289, 296 (W. Va. 1950).  There is a presumption that a contract is intended to benefit the contracting parties rather than third persons, and "the implication to overcome that presumption must be so strong as to amount practically to an express declaration" that a person or class of persons hold third-party beneficiary status. Ison v. Daniel Crisp Corp., 122 S.E.2d 553, 557 (W. Va. 1976).

In this case, the policy covenants to "pay medical expenses" without regard to fault up to the applicable limit for "bodily injuries" on premises that Janet's owns or rents.  ECF No. 23-1, at 137.  With a single exception for volunteer workers, insureds are excluded from receiving medical payments benefits under the coverage.  And it does not appear, based on the record before the court, that anyone other than Slone has attempted to recover medical payments benefits during the year for which the policy was effective, April 13, 2016 to April 13, 2017.  On the other hand, non-insured, non-policyholding guests injured on Janet's property during the relevant period, such as Slone, are not excluded from receiving medical payments

benefits.  Thus, it is clear from the face of the insurance policy that the plaintiff belongs to a class of individuals intended to benefit from the medical payments coverage, <u>i.e.</u> individuals (primarily guests) injured on Janet's premises who are eligible to receive benefits from the coverage during the year for which it was effective.

The court accordingly concludes that Slone holds third-party beneficiary status just as did the plaintiff in <u>Goff</u>.  Insofar as <u>Goff</u> stands for the proposition that third-party beneficiaries may assert UTPA bad faith claims against insurers, it tends to support the conclusion that Slone may assert a statutory bad faith claim in this action.

It is noted that some courts have rejected the view that injured guests on the premises of insureds are third-party beneficiaries of medical payments coverage provisions, finding that such a class of potential third parties is too broad or that such provisions are actually intended to benefit the insured.  <u>See</u> <u>Schmalfeldt v. North Pointe Ins. Co.</u>, 670 N.W.2d 651 (Mich. 2003) (concluding that business patrons constitute "too broad" a class "to qualify for third-party status" absent specific language in the contract bestowing third-party

beneficiary status); Zegar v. Sears Roebuck and Co., 570 N.E.2d 1176, 1179 (Ill. App. Ct. 1991) (concluding that the coverage is intended to benefit the insured); see also Trouten v. Heritage Mut. Ins. Co., 632 N.W.2d 856 (S.D. 2001) (finding Zegar persuasive).

Still, as the Seventh Circuit has remarked, "[t]he weight of authority suggests that medical payment provisions regarding injured third parties are third party beneficiary contracts" inasmuch as medical payments provisions operate without regard to the insured's liability and create obligations in insurers to injured parties. Donald v. Liberty Mutual Ins. Co., 18 F.3d 474, 481 (7th Cir. 1994) (citing Hein v. American Family Mutual Insurance Co., 166 N.W.2d 363, 365 (Iowa 1969) Motto v. State Farm Mutual Insurance Co., 462 P.2d 620, 621 (N.M. 1969); Johnson v. New Jersey Manufacturers Indemnity Insurance Co., 174 A.2d 4, 8 (N.J. Super. Ct. App. Div. 1961); 8A Appleman on Insurance Law and Practice § 4902 (Rev. Vol. 1981)); accord Harper v. Wassau Ins. Co., 66 Cal. Rptr. 2d 64, 69-70 (Cal. Ct. App. 1997) (collecting cases). Moreover, commentators have remarked more currently that "only the injured person has a right to enforce the obligation of the insurer" to

pay expenses under medical payments coverage.  11 <u>Couch on Insurance</u> § 158:25 (3d ed. 2020); <u>see</u> <u>also</u> 203A <u>Appleman on Insurance Law and Practice</u> § 4902 (2d ed. 2011) ("Generally, medical payment clauses are considered to constitute separate accident insurance coverage.  Such coverage is divisible from the remainder of the policy, and creates a direct liability to the contemplated beneficiaries.").

Additionally, the Supreme Court of Appeals has consulted the West Virginia Insurance Commissioner's definitions in cases where it is not entirely clear whether a plaintiff asserting UTPA and common law bad faith claims is a first or third-party claimant.  <u>See</u> <u>Dorsey v. Progressive Classic Ins. Co.</u>, 753 S.E.2d 93, 98 (W. Va. 2013); <u>Loudin v. Nat'l Liab. Fire Ins. Co.</u>, 716 S.E.2d 696, 702-03 (W. Va. 2011).  The Insurance Commissioner defines "third-party claimant" as "any individual, corporation, association, partnership or other legal entity asserting a claim against any individual, corporation, association, partnership or other legal entity insured under an insurance policy or insurance contract of an insurer."  W. Va. C.S.R. § 114-14-2.8.  That is, the Insurance Commissioner uses the same third-party claimant definition as the UTPA.  And as

26

indicated, Slone does not meet that definition.  Thus, the Insurance Commissioner's definition of "third-party claimant," emphasized by the Supreme Court of Appeals, [8]  supports the court's conclusion that the UTPA does not bar the plaintiff from asserting a statutory bad faith claim.

Slone does, however, meet the Insurance Commissioner's definition of "first-party claimant."  According to the Insurance Commissioner, "'First-party claimant' or 'Insured' means an individual, corporation, association, partnership or other legal entity <u>asserting a right to payment under an insurance policy or insurance contract</u> arising out of the occurrence of the contingency or loss covered by such policy or contract."  W. Va. C.S.R. § 114-14-2.3 (emphasis added).  Slone has asserted a right to payment under the State Auto policy, and

---

[8]     In both <u>Dorsey</u> and <u>Loudin</u>, the Supreme Court of Appeals provided fairly in-depth analyses of whether the plaintiffs would be first or third-party claimants under the Insurance Commissioner's W. Va. C.S.R. § 114-14-2 definitions while making only passing references to the UTPA's statutory definition.  <u>See</u> <u>Dorsey</u>, 753 F.3d at 98; <u>Loudin</u>, 716 S.E.2d at 701.  It is not apparent why the court did so in the context of the UTPA claims asserted in those cases inasmuch as the statute itself articulates which claimants lack a statutory cause of action.  Regardless, the Insurance Commissioner's definition of "third-party claimant" mirrors that of the statute and reinforces the idea that W. Va. Code § 33-11-4a(a) (quoted at pp. 19-20, <u>supra</u>) does not bar the statutory claim in this case.

she may do so under the policy inasmuch as she was injured on
Janet's property, has incurred medical expenses, and is not
excluded from receiving medical payments benefits.  Further,
while the defendants challenge her ability to bring bad faith
claims in court, they do not challenge her general ability to
submit Coverage C medical payments claims to the insurer under
the policy.  The policy itself supports the position that she
may submit Coverage C claims directly to the insurer in that it
distinguishes between the insurer's duties to pay medical
"expenses" of individuals who sustain bodily injuries under
Coverage C and its duties to pay "sums that the insured becomes
legally obligated to pay as damages" in separate suits under
Coverages A and B.  ECF No. 23-1, at 132, 136-137.

Moreover, courts that have considered injured
claimants to be third-party beneficiaries under medical payments
provisions have done so in the context of determining whether
such claimants may directly recover payments from insurers under
the relevant policies.  See, e.g., Donald, 18 F.3d at 481;
Harper, 66 Cal. Rptr. 2d at 69-70; Hunt v. First Ins. Co. of
Hawaii, Ltd., 922 P.2d 976, 980-81 (Haw. Ct. App. 1996).  Thus,
it appears that injured medical payments coverage claimants,

generally and under the State Auto policy, fit the definition of "first-party claimant" offered by the Insurance Commissioner inasmuch as they are able to and do assert rights to payments against insurers under medical payments coverage provisions.

In summary, Slone does not meet the statutory definition of "third-party claimant" under W. Va. Code § 33-11-4a(j). Rather, she is a third-party beneficiary like the plaintiff in Goff, and she is a first-party claimant and not a third-party claimant under the Insurance Commissioner's definitions. Based on the foregoing, the court concludes that Slone, as a first-party claimant and third-party beneficiary of the medical payments provision, may assert a bad faith claim under the UTPA.

The court next turns to the common law bad faith claim. In both Dorsey and Loudin, the Supreme Court of Appeals determined that the plaintiffs were first-party claimants asserting cognizable statutory and common law bad faith claims without drawing any distinctions between the separate causes of action with regard to first and third-party status. See Dorsey, 753 S.E.2d at 96-99; Loudin, 716 S.E.2d at 700-05. This could suggest that, based on the court's determination that Slone may

29

bring a statutory bad faith claim, she is entitled to bring a common law bad faith claim as well.

The Supreme Court of Appeals has articulated in the context of a common law bad faith analysis that, generally speaking, "[a] first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim filed by the insured."  Syl. Pt. 2, Loudin, 716 S.E.2d at 697.  On the other hand, a "third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor."  Id. at 700 (quoting State ex rel. Allstate Ins. Co. v. Gaughan, 508 S.E.2d 75, 86 (1998)).

Slone does not fall into either of these general definitions.  She is not an insured suing her own insurer.  And she has not prevailed in a separate action concerning the medical payments claim.  Slone maintains that she did, in fact, file a separate, unsuccessful suit against Janet's.  However, according to the complaint and the parties' briefs, that action concerned a liability coverage claim relating to the accident at the restaurant and did not involve the medical payments coverage claim that is the subject of this bad faith action.  See ECF No.

1-3, at ¶ 22; ECF No. 4, at 2 n. 3; ECF No. 6, at 2.

As noted, the Supreme Court of Appeals has looked to the Insurance Commissioner's definitions when it is not obvious whether a plaintiff is a first or third-party claimant with regard to both common law and UTPA bad faith claims.  See Dorsey, 753 S.E.2d at 98; Loudin, 716 S.E.2d at 702-03.  The court's determination in the UTPA context that Slone fits the Insurance Commissioner's first-party claimant definition and does not fit the third-party claimant definition accordingly applies equally in the context of a common law bad faith analysis.

The court concludes that Slone is not precluded from asserting a common law bad faith claim.  And inasmuch as she may assert a UTPA bad faith claim as well, the court will not dismiss any bad faith claim asserted against the defendants on the basis that she is a third-party claimant.

The defendants offer a conclusory argument for dismissal of the fraud claim, asserting only that the "claim for fraud (Count III) similarly must be dismissed as it arises out of the claims-handling process of Plaintiff's claim for medical

31

payments under the policy." ECF No. 4, at 8; ECF No. 7, at 5 (same). They do not expound on this point in any manner, and inasmuch as their argument appears to hinge on the success of their arguments attacking the bad faith claims, the court declines to dismiss the fraud claim for failure to state a claim.

### B.   Insufficient Service of Process

The court turns to the defendants' argument challenging service of Mask and Lenthe. Specifically, the defendants argue that West Virginia Rule of Civil Procedure 4(d)(1)(D) "permits service of process by certified mail <u>restricted to the addressee</u>" but that "service was not restricted to the addressee as it was delivered to State Auto's corporate address where neither Defendant Mask nor Defendant Lenthe reside." ECF No. 4, at 8-9 (emphasis in original).

Slone responds that the defendants have waived objection to service of process by entering an appearance and removing the action to this court. ECF No. 6, at 5. She also argues that Rule 4(d)(1)(D) "does not distinguish whether [] service must be made at [a d]efendant's dwelling or place of

business, only that it be made to the individual," and that
service was made to Mask and Lenthe as individuals at their
place of business inasmuch as they are employees or agents of
State Auto.  Id. at 5-6.  Further, Slone states that the
defendants concealed Mask and Lenthe's whereabouts and that the
Insurance Commissioner's website had no information that would
indicate that they "could be served other than through their
employer's main office in Columbus, Ohio."  Id. at 6.

As to the waiver issue, Federal Rule of Civil
Procedure 12(h)(1) provides for the waiver of a Rule 12(b)(5)
defense under certain circumstances, including when the defense
is not raised in a motion prior to the filing of a responsive
pleading or in a responsive pleading.  However, as this court
has observed, "[a] party who removes an action from a state to a
federal court does not thereby waive any of his Rule 12(b)
defenses or objections."  Corbitt v. Air Prods. and Chems.,
Inc., No. 6:07-cv-00200, 2007 WL 9718736, at *1 (S.D. W. Va.
Aug. 31, 2007) (citing Freeman v. Bee Mach. Co., 319 U.S. 448,
451 (1943)).

33

In this case, the defendants actually raised the
service of process issue in the notice of removal and raised it
in the pending motion prior to the filing of any responsive
pleading.  Inasmuch as the action of removal does not waive a
Rule 12(b)(5) defense, the court concludes that the defendants
have not waived their objections to service of process.

The court next turns to the validity of the service
itself.  The exact date of purported service on Mask and Lenthe
is not entirely clear from the record.  But the relevant
summonses are each dated April 16, 2019, and the state court
record documents two unspecified returns received on May 3,
2019.  Inasmuch as the case was removed to this court on May 24,
2020, the court concludes that the purported service occurred
while the case was before the Circuit Court of Mingo County and
that West Virginia law should therefore guide the service
analysis.  See, e.g., McCoy, 858 F. Supp. 2d at 651-52 ("State
law governs whether service of process is properly effected if
attempted prior to removal.") (citing Brazell v. Green, 67 F.3d
293, 1995 WL 572890 (4th Cir. 1995) (unpublished table opinion);
Wolfe v. Green, 660 F.Supp.2d 738, 745-46 (S.D. W. Va. 2009)).

West Virginia Rule of Civil Procedure 4(d)(1)(D) provides that service may generally be made on an individual by "[t]he [county] clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee."  When considering the "delivery restricted to the addressee" language of the rule, courts tend to focus on whether there was an indication in the mailing that delivery was restricted to the addressee and whether the return was actually signed by someone other than the individual to whom delivery should have been restricted.  See, e.g., Van Wagner v. Snow, No. 11-1131, 2012 WL 3115957, at *1 n. 1 (W. Va. July 3, 2012) (memorandum opinion) (noting in the context of Rule 4(d)(1)(D) that the "Restricted Delivery?" spaces on certified mail cards for the purported service of process on respondents were not marked); State ex rel. Farber v. Mazzone, 584 S.E.2d 517, 522 (W. Va. 2003) (concluding that service was defective under Rule 4(d)(1)(B), a prior version of the rule at issue here which contained the same "delivery restricted to the addressee" language, where the temporary secretary of the defendant signed the return receipt).

35

Although the summonses themselves are before the court and the state court docket sheet record appears to indicate that the mailings to Mask and Lenthe were supposed to be restricted to the addressee, neither party has supplied the actual certified mail receipts or returns that might demonstrate whether delivery was actually marked as restricted to the addressees.  And although the state court record documents that two certified mail returns were docketed May 3, 2020, Slone has not shown who signed these returns.  It seems likely that some other State Auto employee inappropriately accepted service on Mask and Lenthe's behalf at State Auto's Columbus headquarters inasmuch as these defendants are individuals who allegedly reside in Tennessee and Minnesota, respectively.  See Jordan-El v. White, No. 3:16-cv-04328, 2016 WL 6514163, at *4 (S.D. W. Va. Oct. 7, 2016) ("Nothing in . . . West Virginia Rule of Civil Procedure 4 permits service to be accomplished by delivering the summons and complaint to a random employee at the home office of a defendant's employer.").  Inasmuch as the plaintiff bears the burden of proving sufficiency of service and she has not done so, these points alone may compel a finding of ineffective service.

36

But regardless of such evidentiary issues, the plaintiff's other arguments, taken at face value, are also unavailing.  Slone's arguments concerning the unavailability of information regarding Mask and Lenthe's whereabouts ignore the possibility of service by other methods under West Virginia law, in particular, the long-arm statute, which contains provisions accounting for the inability to serve process via certified mail.  <u>See</u> W. Va. Code § 56-3-33(c).  Additionally, it is a plaintiff's responsibility to effect service under Rule 4, and it therefore does not fall on the defendants to provide their addresses to Slone.  <u>See</u> W. Va. R. Civ. P. 4(c)(1).

Accordingly, the court finds that Mask and Lenthe were not properly served with process.  Where the first attempt at service is ineffective, "the appropriate remedy under the circumstances [is] to quash the service of process" rather than dismiss the relevant claims under Rule 12(b)(5).  <u>McCoy</u>, 858 F. Supp. 2d at 653 (citing <u>Vorhees v. Fischer & Krecke</u>, 697 F.2d 574, 576 (4th Cir. 1983); <u>Bailey v. Boilermakers Local 667 of Int'l Bhd. of Boilermakers</u>, 480 F. Supp. 274, 278 (N.D. W. Va. 1979)); <u>see also</u> Federal Rule of Civil Procedure 4(m).  Thus, the purported service of process is quashed, and insofar as the

37

motion requests dismissal of Mask and Lenthe on service grounds, the motion is denied without prejudice.

### IV. Conclusion

Based on the foregoing, it is ORDERED that:

1.    The defendants' motion (ECF No. 3) be, and it hereby is DENIED.  The Rule 12(b)(6) arguments are denied with prejudice.  The Rule 12(b)(5) arguments concerning service of process are denied without prejudice.

2.    The attempted service of process on Mask and Lenthe be, and it hereby is, QUASHED.

3.    Slone is directed to properly serve Mask and Lenthe within thirty days from the date of this memorandum opinion and order.  Unless service of process has been obtained by that date, or the plaintiff shows by that date just cause for failure to effect service within the thirty-day period, Mask and Lenthe shall be dismissed for failure to effect service of process.

   The Clerk is directed to forward copies of this

memorandum opinion and order to all counsel of record and any

unrepresented parties.

         ENTER:  January 19, 2021


     John T. Copenhaver, Jr.
     Senior United States District Judge